## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DEBRA BRANDES,               )
                             )
       **Plaintiff,**        )
                             )
v.                          )         **Case No. 4:15-cv-01737-NCC**
                           )
CAROLYN W. COLVIN,     )
**Acting Commissioner of Social Security,**   )
                           )
       **Defendant.**      )

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Debra Brandes ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. No. 17), and Defendant has filed a brief in support of the Answer (Doc. No. 24). The Parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. No. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on July 14, 2012 (Tr. 11). Plaintiff was initially denied on August 3, 2012, and she filed a Request for Hearing before an Administrative Law Judge (ALJ) (Tr. 63-67, 71-74). After a hearing, by decision dated July 2, 2014, the ALJ found Plaintiff not disabled (Tr. 8-29). On October 5, 2015, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2013, and had not engaged in substantial gainful activity since June 1, 2011, the alleged onset date of disability (Tr. 13). The ALJ found Plaintiff has the severe impairments of degenerative disc disease in the thoracic and lumbar spine, coronary artery disease and chronic abdominal pain but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-15).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations (Tr. 15). She will only occasionally be able to climb ramps and stairs but never be able to climb ladders, ropes and scaffolds; she is unable to stoop, kneel, crouch, and crawl; she cannot be exposed to concentrated levels of humidity and pulmonary irritants (fumes, odors, dusts, gases, and poorly ventilated environments); and she cannot be exposed to extreme vibration, moving machinery, unprotected heights and hazardous machinery (Tr. 15-16). She is further limited to simple routine tasks, occasional decision-making in the work setting, and no interaction with the public and coworkers (Tr. 16). However, contact with coworkers can occur as long as said contact is casual and infrequent (*Id.*). The ALJ found Plaintiff unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that she can perform, including mail sorter, marker, and routing clerk (Tr. 24-26). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 26). Plaintiff

appeals to this Court, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to

establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Cox*, 495 F.3d at 617.  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to

support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff broadly alleges that the findings of residual functional capacity are not supported by "some" medical evidence, as required under the standards in *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000) and *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (Tr. 17 at 6). Plaintiff also asserts that the ALJ erred in finding that Plaintiff's mental impairment was non-severe (*Id.* at 16), that the ALJ failed to properly address

Plaintiff's credibility (*Id.* at 17-19), and finally, that the ALJ's reliance upon the hypothetical question to the vocational expert ("VE") is necessarily flawed as a result of these errors (*Id.* at 19). For the following reasons, the court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

## A. Plaintiff's Credibility

The court will first address the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered the lack of objective medical findings to support Plaintiff's allegations regarding the severity of her conditions (Tr. 21-22). *See* 20 CFR § 404.1529(c)(2) (agency will consider "objective medical evidence" when evaluating symptoms); *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (an ALJ may find claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary). For example, as the ALJ noted, Plaintiff's physical and mental health examinations were generally normal; Plaintiff's treating physician indicated on multiple occasions that Plaintiff was alert and oriented, exhibited normal behavior, normal affect and mood, was well organized, had full strength and sensation, normal reflexes, intact coordination, and a normal gait, no leg pain, back pain or diffuse stiffness (Tr. 21, 206, 211, 216, 217, 222, 227, 453, 455). Similarly, as indicated by the ALJ, diagnostic tests failed to support Plaintiff's allegations of disabling physical impairments (Tr. 21, 243-46).

The ALJ also found that Plaintiff had "not generally received the type of medical treatment one would expect for a totally disabled individual" (Tr. 21). For example, the ALJ noted that Plaintiff only saw her primary care physician every three months and that after multiple visits, reports indicated that Plaintiff's conditions were stable (Tr. 21). *See* Tr. 210, 215, 220, 452 (indicating that Plaintiff's symptoms for COPD are stable, her chronic pain syndrome has improved or remained stable, and her depression is improved by counseling and medications and clinically resolved). *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687,

693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that she alleged").  Importantly, Plaintiff did not seek ongoing treatment from a mental health provider.  *See Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) (holding that the failure to seek mental treatment is a relevant consideration when evaluating a claimant's mental impairment); *Kirby v. Astrue,* 500 F.3d 705, 708-09 (8th Cir. 2007) (affirming ALJ's finding that claimant did not suffer significant impairment due to psychiatric illness when claimant had never had any formal treatment by psychiatrist, psychologist, or other mental health professional on a long-term basis).

The ALJ also noted that while Plaintiff received treatment for the allegedly disabling conditions, treatment has been generally successful in controlling those symptoms (Tr. 21).  As previously discussed, Plaintiff's records indicated that Plaintiff's symptoms for COPD were stable, her chronic pain syndrome improved or remained stable, and her depression improved by counseling and medications and was clinically resolved.  *See* Tr. 210, 215, 220.  *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009); *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009*); Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

Second, the ALJ questioned Plaintiff's credibility regarding the severity of her symptoms based on Plaintiff's failure to follow treatment advice (Tr. 21).  The ALJ found Plaintiff "failed to follow-up on recommendations made by the treating doctor" (Tr. 21).  For example, Dr. Fortunato frequently counseled Plaintiff on activity, exercise, diet and smoking cessation (Tr. 21, 207-08, 223, 233).  He also referred her to several specialists including a psychologist, a gastroenterologist, neurologist, neurosurgeon, and cardiologist (Tr. 21, 218, 427-28, 450, 457).

However, Plaintiff failed to make these recommended changes; there is nothing in the record to suggest that she followed up on these recommendations or saw these specialists. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility). Indeed, the record reflects Plaintiff continued to smoke (Tr. 21, 205, 218, 223, 378, 457). *Mouser v. Astrue,* 545 F.3d 634, 638 (8th Cir. 2008) (an ALJ may consider disability claimant's failure to stop smoking in making his credibility determination). Furthermore, Dr. Fortunato noted, on at least one occasion, that Plaintiff was overusing her narcotic medication (Tr. 19, 224). *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) ("A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations.").

Third, the ALJ considered that Plaintiff quit working for reasons unrelated to her impairments (Tr. 22). Although Plaintiff fell in January 2011 and suffered a right femur fracture, she continued to work as a home health aide caring for an elderly person until June 2011 when "the person passed away" (Tr. 143). Leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. *Medihaug*, 578 F.3d at 816-17; *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992).

Finally, the ALJ found that Plaintiff had "made inconsistent statements regarding matters relevant to the issue of disability" (Tr. 22). Plaintiff testified to the following extremely limited daily activities: "I don't even do dishes anymore" (Tr. 42), "I don't leave my house" (*Id.*); "I wake up and then I sit on my recliner or the couch. That's it." (Tr. 44); having to make sure someone is present when she showers (Tr. 44); vomiting several times a day (Tr. 45); spending 24 hours a day in her recliner (Tr. 46); and not doing any chores—"They [(Plaintiff's family)] do everything for me" (Tr. 48). However, as the ALJ noted, in July 2011, Plaintiff reported

experiencing hip pain after she "went swimming 3 weeks ago with [her] 4 year old nephew for 6 hours" (Tr. 254). She also indicated, during an August 2011 hospitalization, that she engaged in the following "leisure and hobbies: fishing, watch tv, numerous pets, spend time with family" (Tr. 380). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). Further, contradictions between a claimant's sworn testimony and what she actually told health care providers also weighs against the her credibility. *Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006).

In conclusion, the court finds that the ALJ's credibility determination is based on substantial evidence and consistent with the Regulations and case law.

**B. Severe Impairment**

Next, the court will address Plaintiff's assertion that the ALJ erred in finding that Plaintiff's mental impairment, depression, was non-severe (*Id.* at 16). Specifically, Plaintiff argues that the decision fails to articulate a legally sufficient rationale to support the ALJ's determination that Plaintiff's mental impairment was non-severe in light of Plaintiff's prescription for medication, Plaintiff's consistent complaints, a consistent diagnosis from Dr. Vincent Fortunato ("Dr. Fortunato"), Plaintiff's treating primary care physician,[1] and Plaintiff's hospitalization records (*Id.*).

As stated above, 20 C.F.R. § 404.1520, sets forth the five-step sequential evaluation process for determining whether a claimant is disabled within the Act's meaning. At step 2, the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). A qualifying impairment "must result from anatomical, physiological, or psychological

---

[1] The Parties do not dispute that Dr. Fortunato is Plaintiff's treating physician (*See* Doc. No. 17 at 6 and Doc. No. 24 at 16).

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. Thus, an alleged qualifying impairment must be medically determinable. *Id.* The required medical evidence must be from an acceptable medical source, such as a licensed physician. 20 C.F.R. § 404.1513(a)(1)-(2) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)."; acceptable medical sources include licensed physicians).

In order for the impairment to be considered "severe," "the impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.' " *Bowen v. Yuckert*, 482 U.S. 137, 153 n.11 (1987) (quoting 20 CFR § 404.1520(c)). "Basic work activities" encompass the abilities and aptitudes necessary to perform most jobs. 20 C.F.R. § 404.1521(b). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707. In other words, if the impairment has only a minimal effect on the claimant's ability to work, then it is not severe. *See Page*, 484 F.3d at 1043. In the case of mental health impairments, the ALJ must consider four broad functional areas to determine whether a claimant's mental impairments are severe, including "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3). Additionally, the "ALJ may consider . . . (1) the claimant's failure to allege mental impairments in [her] complaint, (2) failure to seek mental treatment, (3) the claimant's own statements, and (4) lack of medical evidence indicating mental impairment." *Partee*, 638 F.3d at 864. Ultimately, however, a claimant has the burden of establishing a severe impairment. *See Kirby*, 500 F.3d at 707.

The court finds that Plaintiff failed to meet her burden to establish depression as a severe impairment. In evaluating Plaintiff's mental health impairments, the ALJ determined that while Plaintiff had the medically determinable mental impairment of depression, it "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere" (Tr. 14). The ALJ acknowledged that Plaintiff "has demonstrated some moderate depressive symptoms and frustration" but nonetheless determined that "she has been maintained well on medications through her primary care physician, has sought no formal psychological treatment outside of this source[,] her mental status examinations are normal overall [and s]he stopped working due to a death in the family rather than due to her conditions" (*Id.*).

In support of his conclusion, the ALJ properly considered the four broad functional areas and determined that Plaintiff had no limitation in her activities of daily living; no limitation in social functioning; mild limitations in concentration, persistence, or pace; and no episodes of decompensation (*Id.*). As addressed in more detail above, the ALJ found Plaintiff's self-reported activities of daily living only partially credible as they were "out of proportion to the objective evidence in file" (Tr. 15). The ALJ also relied on Plaintiff's normal mental-status examinations and lack of ongoing treatment by a mental-health provider (Tr. 14). *Vanlue v. Astrue*, 2012 WL 4464797, at *12 (E.D. Mo. Sept. 26, 2012) (affirming the ALJ's finding that depression was not a severe impairment where the claimant had sought only minimal and conservative treatment and the claimant never required more aggressive forms of mental health treatment than medication). Furthermore, although the ALJ determined that Plaintiff's impairment of depression was non-severe, he accounted for the credible work-related limitations resulting from the impairment in

his RFC findings (*See* Tr. 15-16).  In conclusion, the court finds that Plaintiff failed to meet her burden to establish that her depression constitutes a severe impairment.

## C. Plaintiff's RFC

The Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations."  20 C.F.R. § 404.1545(a).  "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments."  *Lauer*, 245 F.3d at 703.  "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.' "  *Tucker*, 363 F.3d at 783 (quoting *McKinney*, 228 F.3d at 863).  *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite her impairments.  *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995).

Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "claimant's residual functional capacity is a medical question."  *Lauer*, 245 F.3d at 704 (quoting *Singh*, 222 F.3d at 451).  The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence… must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704, *quoting Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Thus, an ALJ is "required to consider at least some supporting evidence from a professional."  *Id.  See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because

RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b)[2] with the following limitations (Tr. 15).  She will only occasionally be able to climb ramps and stairs but never be able to climb ladders, ropes and scaffolds; she is unable to stoop, kneel, crouch, and crawl; she cannot be exposed to concentrated levels of humidity and pulmonary irritants (fumes, odors, dusts, gases and poorly ventilated environments); and she cannot be exposed to extreme vibration, moving machinery, unprotected heights and hazardous machinery (Tr. 15-16).  She is further limited to simple routine tasks, occasional decision-making in the work setting, and no interaction with the public and coworkers (Tr. 16).  However, contact with coworkers can occur as long as said contact is casual and infrequent (*Id.*).

Although Plaintiff asserts that the ALJ failed to support his residual functional capacity determination with "some" medical evidence as required under the standards in *Singh*, 222 F.3d 448, and *Lauer*, 245 F.3d 700, the court finds the ALJ's RFC determination was based on substantial evidence.  Specifically, as addressed in significant detail above, the ALJ properly addressed Plaintiff's credibility and in doing so, conducted a complete and detailed analysis of Plaintiff's medical record, activities of daily living, and other appropriate indicia of credibility.

_____

[2] 20 C.F.R. § 404.1567(b) defines light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

The ALJ additionally addressed the medical opinion evidence of record, affording the opinions of Dr. Marsha Toll ("Dr. Toll"), Psy. D., and Dr. Kenneth Glass, M.D. ("Dr. Glass"), state agency examiners, "some weight" (Tr. 22-23) and the opinions of Dr. Fortunato "no weight" (Tr. 23).

After reviewing the evidence of record, Dr. Toll issued a case analysis regarding Plaintiff's medically determinable impairments and their severity dated August 3, 2012 (Tr. 53-60). In her assessment, Dr. Toll concluded that while Plaintiff was diagnosed with an affective disorder, depression, "she has been maintained well on her meds through her PCP, has sought no formal psychological treatment outside of this source and her [Mental Status Examinations] MSEs are normal overall" (Tr. 56). She also opined, Plaintiff "stopped working [in] the past due to a death in the family and not due to her conditions" (*Id.*) and that in Plaintiff's activities of daily living, although Plaintiff "reports that she has difficulty with all mental tasks and doesn't handle stress or changes well[, t]hese reported limits are out of proportion to the objective evidence in file and are only partially credible" (*Id.*). Accordingly, Dr. Toll concluded "the claimant's mental condition is non-severe" (*Id.*). On January 3, 2013, Dr. Glass completed a case analysis in which he opined Plaintiff could perform light work (Tr. 247-50).

The court finds that the ALJ gave proper weight to the opinions of Dr. Toll and Dr. Glass. The ALJ afforded the opinions "some weight," finding that,

> [a]lthough not treating doctors, the objective medical findings made by the State agency medical and psychological consultants, as…qualified expert[s] in evaluating medical and psychological issues in Social Security disability claims, are given substantial evidentiary weight in accordance with SSR 96-2p, as the opinions about the claimant's physical and psychological impairments are consistent with the record as a whole and support the residual functional capacity set forth above.

(Tr. 23).

As addressed in more detail above, Dr. Toll and Dr. Glass are highly qualified experts who offered opinions consistent with the record as a whole. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence); *Kamann*, 721 F3d at 951 (State agency psychologist's opinion supported the ALJ's finding that claimant could work despite his mental impairments); *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (finding the ALJ did not err in considering State agency psychologist's opinion along with the medical evidence as a whole). Although Plaintiff asserts that the ALJ failed to offer a legally sufficient rationale for giving these reports "great weight"[3] because the state agency examiners did not consider any notes from Dr. Fortunato after September 2012, Plaintiff's assertion is flawed (Doc. No. 17 at 16). Dr. Toll's opinion dates from August 3, 2012 and, accordingly, Dr. Toll was incapable of reviewing medical records from any period after that date. Also, while Dr. Glass' opinion is dated January 3, 2013, thereby omitting the review of, perhaps, three months of records from Dr. Fortunato, it is not clear that these records were provided to the Social Security Administration prior to Dr. Glass' review. Plaintiff was represented by counsel at the time, and Dr. Glass contacted and received evidence from Plaintiff's attorney in December 2012 (Tr. 247). Dr. Glass was not required to detail every report he relied on in completing his analysis. The court also notes that, even if Dr. Glass reviewed the same medical records as Dr. Toll, as an M.D., Dr. Glass' credentialing necessarily provides him with a different perspective of the medical record than that of Dr. Toll, a Psy. D.

Next, the ALJ considered the opinions of Dr. Fortunato, Plaintiff's treating physician. In a December 28, 2011 fill-in-the-blank note, Dr. Fortunato stated that Plaintiff was "unable to

---

[3] Plaintiff incorrectly indicates that the ALJ gave these opinions "great weight;" the ALJ gave the opinions "some weight" (Tr. 23).

look for work until further notice" (Tr. 463). Similarly, in a letter dated September 25, 2012, Dr. Fortunato indicated that he was treating Plaintiff for chronic back pain, opioid tolerance, chronic pain syndrome, depression, memory loss, history of intestinal resection from ischemia/obstruction and abscess (Tr. 464). He opined, "[Plaintiff] cannot work due to the chronic back pain, depression and memory loss. I have referred her to a psychologist, pain specialists and a psychiatrist. Her depression inhibits her thought process to the degree that she forgets her medications and experiences frequent periods of prolonged lethargy" (Tr. 464). Dr. Fortunato also completed a Physical Residual Functional Capacity Questionnaire dated June 5, 2014 (Tr. 459-62). In the Questionnaire, Dr. Fortunato opined that Plaintiff's pain or other symptoms would frequently interfere with her attention and concentration; she cannot walk for more than half a block without rest or severe pain; she can sit for only 20 minutes at one time; that she can stand for 10 minutes at one time; Plaintiff could sit and stand/walk for less than two hours during an 8-hour working day; she would need to walk around every 11-15 minutes during an 8-hour working day for at least 11-15 minutes; she would need the ability to shift positions at will from sitting, standing or walking; she would also need to take unscheduled breaks during an 8-hour work day; she would need to take unscheduled breaks; she can rarely lift less than 10 lbs.; and that she would miss more than 4 days of work per month (Tr. 460-62).

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.' " *Id.* (quoting *Prosch v.*

*Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted). "Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so." *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

The court finds that the ALJ gave proper weight to the opinions of Dr. Fortunato. In giving the opinions of Dr. Fortunato "no weight," the ALJ found Dr. Fortunato's opinions inconsistent with his own treatment notes (Tr. 23). Specifically, the ALJ indicated that the stated limitations were "not supported in [] Dr. Fortunato's contemporaneous office or progress notes" and his "own office visit notes fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled" (Tr. 23). The ALJ also found Dr. Fortunato's opinion "without substantial support from the other evidence of record" and that "[t]he doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant" (Tr. 24). *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (Commissioner may give treating physician's opinion less deference when it is based on claimant's subjective complaints rather than objective medical evidence). Indeed, as addressed above, diagnostic tests failed to support Plaintiff's allegations of disabling physical impairments (Tr. 21, 243-46).

Also, in two of his opinions (Tr. 463-64), Dr. Fortunato provides very little to no medical support for his ultimate conclusion that Plaintiff cannot work. "A treating physician's opinion that a claimant is not able to return to work 'involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling

weight.' " *Rosa v. Astrue*, 708 F. Supp. 2d 941, 949 (E.D. Mo. 2010) (quoting *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

Furthermore, as is the case with the third, remaining opinion, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." *Swarnes v. Astrue*, Civ. No. 08–5025–KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted); *see also Wildman*, 596 F.3d at 964 (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration).

Finally, to the extent Plaintiff identifies records that support Plaintiff's allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

In conclusion, the court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, and diagnostic test results, as well as Plaintiff's credible limitations; that the ALJ's RFC determination is based on substantial evidence; and that Plaintiff's arguments to the contrary are without merit.

**D. VE Hypothetical**

Finally, Plaintiff asserts that because the restrictions contained in the RFC are not supported by the evidence of record, the hypothetical question posed to the vocational expert is consequently flawed and the vocational expert's response does not represent substantial evidence. However, as previously addressed, the court finds the ALJ's RFC determination to be consistent with the relevant, credible evidence of record. Accordingly, as the ALJ appropriately

included the restrictions as indicated in his RFC determination in the hypothetical question to the vocational expert, the court finds that the hypothetical which the ALJ submitted to the vocational expert was proper, the ALJ properly relied on the vocational expert's testimony that there were jobs existing in significant numbers which Plaintiff could perform, and Plaintiff's arguments to the contrary are without merit (*See* Tr. 49-52). *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ."). Because there were other jobs which Plaintiff could perform, the court additionally finds that the ALJ's determination that Plaintiff was not disabled is based on substantial evidence and is consistent with the Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 17th day of January, 2017.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE